IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CRIMINAL Nos. 99-161 (DRD) |
| | 99-308 (DRD) |
| ROBERTO LOPEZ-MORALES, | |
| Defendant. | |

### SECOND MOTION REQUESTING EARLY TERMINATION OF SUPERVISED RELEASE

TO THE HONORABLE DANIEL R. DOMINGUEZ
UNITED STATES DISTRICT JUDGE
FOR THE DISTRICT OF PUERTO RICO

**COMES NOW**, defendant, Roberto Lopez-Morales, represented by the Federal Public Defender for the District of Puerto Rico through the undersigned attorney, and very respectfully state, alleges, and prays as follows:

1. The defendant Roberto Lopez-Morales (hereinafter "Mr. Lopez-Morales") was charged by way of Superceding Indictment[1] returned on August 12, 1999 and Indictment returned on September 22, 1999, respectively. (Criminal No. 99-161 (DRD), Docket No. 27 and Criminal No. 99-308 (DRD), Docket No. 2.)   The charges were conspiracy and narcotics importation.  Mr. Lopez-Morales plead guilty pursuant to a plea agreement subscribed and accepted on June 8, 2001. (Docket Nos. 327 and 230 respectively.)

---

[1]A Second Superceding Indictment was filed on February 15, 2001 in Criminal No. 99-161 (DRD) (Docket No. 287.)

2.  Mr. Lopez-Morales was sentenced by this Honorable Court on December 20, 2001, (Docket Nos. 315, 319), to concurrent terms of 87-months imprisonment as to each case and 5 years of supervised release as to each case, concurrent. (Judgments, Docket Nos. 362 and 266 respectively.)

3.  On March 18, 2005, Mr. Lopez-Morales was released from custody and commenced to serve his supervised release term.  Mr. Lopez-Morales began reporting to the United States Probation Office for the District of Puerto Rico.  He specifically reports to United States' Probation Officer Benjamin Bonilla.

4.  Mr. Lopez-Morales has completed over three years out of five years of the supervised release term imposed on him by this Honorable Court.  Accordingly, and for the reasons set forth below, Mr. Lopez-Morales is seeking that the remainder of his supervised release be terminated.

5.  Section 3583(e) of Title 18, United States Code, provides in pertinent part that:

> The court may, after considering the factors set forth in section 3553 (a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)--[2]

---

[2]The factors to be considered are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

2

(1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice;

....

18 U.S.C. § 3583(e)(1).

6.   Under the above-quoted subsection, a defendant can petition the Court for early termination of his or her supervised release term.  The Court in turn must be satisfied that such remedy is warranted both in the interest of justice and after giving due consideration to the factors found in 18 U.S.C. § 3553(a). *See United States v. Joseph*, 109 F.3d 34, 39 (1st Cir. 1997); *see also United States v. Reagan*, No. 05-10952, 2006 U.S. App. LEXIS 1250 at *7 (11th Cir. Jan. 17, 2006).  Keeping in mind that "congressional policy in providing for a term of supervised release after incarceration is to improve the odds of a successful transition from prison to liberty" *Johnson v. United States*, 529 U.S. 694, 708-09 (2000), it has been held that District Courts enjoy **broad discretion** in deciding whether or not to terminate a supervised release term. *United States v. Jeanes*, 150 F.3d 483, 484 (5th Cir. 1998)(emphasis added).  Such discretion exists even in the face of mandatory supervised release terms. *United States v. Spinelle*, 41 F.3d 1056, 160-61 (6th Cir. 1994).

7.   Moreover, In March of 2003 the Judicial Conference approved for use as reference The Supervision of Federal Offenders, Monograph 109 with the following

---

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

statement:

> On recommendation of the Committee on Criminal Law, the Judicial Conference approved revisions to the *Supervision of Federal Offenders,* Monograph 109, for publication and distribution to the courts. The revisions reflect changes in statutes, case law, policies, and population trends, and incorporate "best practice" findings from research and other sources.

(Report of Proceedings Judicial Conference of the United States March 2003 at 11-12.)

8. Monograph 109, on the other hand, as revised lastly in 2007, provides the following:

> Officers should consider the suitability of early termination for offenders as soon as they are statutorily eligible. The general criteria for assessing whether a statutorily eligible offender should be recommended to the court as an appropriate candidate for early termination are as follows:
>
> 1. stable community reintegration (e.g., residence, family, employment);
>
> 2. progressive strides toward supervision objectives and in compliance with all conditions of supervision;
>
> 3. no aggravated role in the offense of conviction, particularly large drug or fraud offenses;
>
> 4. no history of violence (e.g., sexually assaultive, predatory behavior, or domestic violence);
>
> 5. no recent arrests or convictions (including unresolved pending charges), or ongoing, uninterrupted patterns of criminal conduct;
>
> 6. no recent evidence of alcohol or drug abuse;
>
> 7. no recent psychiatric episodes;
>
> 8. no identifiable risk to the safety of any identifiable victim; and
>
> 9. no identifiable risk to public safety based on the Risk Prediction Index (RPI).

(*Supervision of Federal Offenders,* Monograph 109, Chapter III at 19-20.)

4

9.  Monograph 109 also directs that "[d]uring the first 18 months of supervision, the appropriateness of early termination should be based on the offender's overall progress in meeting supervision objectives and should include an evaluation of all the circumstances in the individual case." (*Id.* at 20.)

10.  Finally, and most importantly, the Judicial Conference has adopted a presumption in favor of recommending early termination in the following cases: (1) when the releasee has been under supervision for at least 18 months and (a) is not career violent and/or drug offender (as described in 28 U.S.C. § 994(h)), sex offender, or terrorist, (b) present no identified risk to the public or victims, and (c) is free from any moderate or high severity violations; and (2) the releasee has been under supervision for at least 42 months and (a) is not career violent and/or drug offenders (as described in 28 U.S.C. § 994(h)), sex offender, or terrorist, and (b) is free from any moderate or high severity violations.  (*Id.*)

11.  In the record of the present case, there is absolutely no report or allegation that Mr. Lopez-Morales has failed in any way to comply with any of the conditions of supervised release imposed on him.   On the contrary, it appears that Mr. Lopez-Morales has exemplarily complied.  There has been no report of drug use, new criminal conduct or failure to report to his probation officer.  Mr. Lopez-Morales files his monthly supervision reports in a timely manner and reports personally to his probation officer as instructed.  A review of the record in this case does not reveal a single motion informing the Court of any violations.

8.  In addition, Mr. Lopez-Morales has demonstrated extraordinary rehabilitation both while under custody and under supervision.  For instance, while incarcerated serving his prison term, Mr. Lopez-Morales received numerous merit certificates and certificates of completion of different programs and Courses.

9.  Specifically, while incarcerated, Mr. Lopez-Morales took advantage of the many opportunities provided by the Bureau of Prisons in furtherance of his genuine interest to rehabilitate.  First, on August 14, 2004, the defendant was awarded certificate of satisfactory completion of a 48-hour course titled "Keys to Loving Family Relationships." (Exhibit 1.)  On July 31, 2002, the defendant began preparing to his life in the free community by enrolling and completing a 20-hour training in Career Planning. (Exhibit 2.) In the year 2000, the defendant also completed a card-making art course (Exhibit 3) and was recognized for his successful completion of the "Reintegrating Into the Family" program offered by MDC. (Exhibit 4.) Mr. Lopez-Morales was also Baptized while at MDC, showing his interest in living a religious life. (*See* Certificate of Baptism, Exhibit 5.)  At MDC, Mr. Lopez-Morales was similarly recognized for his achievement and contribution in the "Life Without a Crutch" program sponsored by the Psychology Services group (Exhibit 6).

10.  Importantly, while incarcerated, Mr. Lopez-Morales took advantage of the several substance abuse treatment programs offered by the BOP.  At MDC he completed a 40-hour Drug Abuse Education Course as evidenced by the Certificate of Achievement issued on December 14, 2000. (Exhibit 7.)  Moreover, at FCI McKean, Mr. Lopez-Morales completed the more comprehensive 500-hour residential drug abuse program. (Exhibit 8.)

6

Not only did he complete said program, he was recognized for his overall outstanding participation in the same, for having being positively involved in all facets of the program, for putting forth a lot of effort into assignments, for showing support for fellow group members and for displaying enthusiasm in his own treatment. Clearly, a remarkable example of a defendant exceeding in the expectations of what a defendant should do in order to achieve his or her own rehabilitation.

11. With respect to his efforts for educating himself, the Court needs to be aware of the fact that Mr. Lopez-Morales has been taking the necessary steps to obtain his High School Diploma (GED). He took in November of last year the pre-exams, which is a requirement to request admission into the official GED exam. He approved said Pre-Exam. (Exhibit 9.) He is now in the process of requesting admission to the official exam.

12. In addition, the Court should take into account that Mr. Lopez-Morales is a gainfully employed business man. He is engaged in the business of buying vehicles and re-selling them for a profit. The defense was able to obtain letters from two of the car dealerships that do business with Mr. Lopez-Morales confirming that Mr. Lopez-Morales has worked for them for the past three years in the business of buying and selling cars. (*See* Exhibits 10 and 11.) In addition, whenever possible, the defendant works with his brother Leonel Lopez who is the owner of LM Electrical Contractors assisting his brother in the different projects of the company. Mr. Lopez-Morales has complied with his obligation of filing tax returns in accordance with the law. As a businessman, he also is registered at the Puerto Rico Treasury for collection of Sales Tax purposes.

13.  Furthermore, with the present motion we are submitting the Statement under Oath of Ms. Jazmin Caban Rodriguez. (Exhibit 12.) Ms. Caban-Rodriguez states under oath that she had a consensual relationship with Mr. Lopez-Morales from which two children were procreated.  She explains that Mr. Lopez-Morales is a good provider who provides child support and also assist in school related expenses.  The relationship with the children is good and healthy as declared by Ms. Caban-Rodriguez as well as the relationship between the children and the paternal grandparents.  This is also a factor to consider.

14.  Mr. Lopez-Morales also wants the Court to be made aware that the reason for his requesting early termination at this time, in addition to all of the above, is the fact that he has certain plans for the future.  He is very interested in re-locating to the United States where he has friends and family.  He also has been considering a business endeavor in the United States in essence flipping houses for a profit.  His supervision, as the Court may imagine, prevents him from traveling or re-locating freely to the United States.

15.  Given all of the above, it is respectfully submitted that the defendant is an example of the type of individual that has absolutely benefitted from the negative experience of having spent over five years in prison.  Mr. Lopez-Morales took advantage of every opportunity given him while serving his sentence and took it upon himself to actively participate in his own rehabilitation.  The result, a defendant that re-incorporated to the free community with stronger personal, moral and religious convictions; a defendant that has exemplary complied with all of the conditions of his supervised release; a defendant that is now a productive member of society.

16.   Since the policy behind the imposition of supervised release terms is, as explained above, to ease that transition from prison into liberty and to improve the odds of said transition being successful, it is respectfully requested that the Court take into consideration the fact that Mr. Lopez-Morales has served without incident over three years of his supervised release term.  He has less than two years to go.  In addition, given the information provided herein, which shows that the defendant has benefitted from supervision and that he is not a risk, the Court should also consider the savings of judicial resources that the discharge of Mr. Lopez-Morales will bring about.

17. Accordingly, and in view of all of the above, it is respectfully submitted that the Court should, in its discretion and in the interest of justice, discharge Mr. Lopez-Morales from the remainder of his supervised release term.  If there is an individual deserving of such privilege, that is Mr. Lopez-Morales.  In addition, to award such privilege, will also encourage others to similarly take advantage of the opportunities and rehabilitate themselves.  Finally, the defendant in this case seems to satisfy all of the factors mandated by the Judicial Conference raising a presumption in favor of early termination.

**WHEREFORE**, it is respectfully requested that this Honorable Court take notice of the present motion and that the same be granted thus ordering Mr. Lopez-Morales' supervised release term terminated.

**I HEREBY CERTIFY** that on this date I electronically filed the present memorandum with the Clerk of Court using the CM/ECF system which will sent electronic notification of said filing to all parties of record.

9

RESPECTFULLY SUBMITTED

In San Juan, Puerto Rico this 14th day of August, 2008.

**JOSEPH C. LAWS, JR.**
**Federal Public Defender**
**District of Puerto Rico**

**_S/Hector L. Ramos-Vega_**
Hector L. Ramos-Vega
Assistant Federal Public Defender
USDC-PR 222504
241 F.D. Roosevelt Ave.
Hato Rey, P.R. 00918-2441
(787) 281-4922/ Fax (787) 281-4899
E-mail: Hector_Ramos@fd.org